PROVOSTY, J.
The defendants are proceeded against for a license as dealers in pistols and pistol cartridges, under Act No. 83, p. 132, of 1900; and they deny the constitutionality of that act, on the ground that the license it imposes is not “graduated,” as required by article 229 of the Constitution.
The same question was presented to this court in the case of Browne v. Selser, 100 La. 691, 31 South. 290, and the constitutionality of the law upheld. But the court so decided with evident reluctance, and only because of the exceedingly liberal interpretation that had been placed in former decisions upon the meaning of the word “graduated,” used in the Constitution. Said the court: “It is not quite so clear that the Legislature has graduated the license. Were the question one of first impression in this court, it may be that our conclusion would be different.” Upon further consideration, we have concluded that the license in question is not “graduated,” and that therefore the law imposing it is unconstitutional.
"Section 1 of Act 83 prescribes that the wholesale dealer in pistols shall pay a license of $125, and that the wholesale dealer in pistol cartridges shall pay a license of $50. It makes no pretense of graduating the license to be paid by the wholesale dealer. Whether his gross sales are one dollar or one million dollars, the license is still the same — $125 for pistols, and $50 for pistol cartridges. In like manner, section 2 of the act fixes at $50 and $25 the license to be paid by the retail dealer in the same articles, and makes no pretense of graduating the license of the retail dealer. Like that of the wholesale dealer, his license remains the same, whether his gross sales are of one dollar or one million.
By “graduating the license” is meant to regulate its amount according to the amount of the gross sales of the licensee, or on some other .basis of proportion. Thus, under the general license law, the wholesale merchant pays $3,500 if his gross sales amount to seven millions or more, and $50 if they amount to a quarter million or less; and the retail merchant’s license varies in the same way, from $3,500 to $5, according to the amount of his sales.
Under this Act 83 there is no such graduation, or any graduation whatever. Whether their gross sales are of one dollar or of a million, the wholesale dealer in pistols pays $125, and the wholesale dealer in pistol cartridges $50, and the retail dealer in pistols $50, and the retail dealer in pistol cartridges $25. - So that in order that his license should vary the merchant would have to change his business. Act 171, p. 394, of 1898, § 6, defines the wholesale dealer to be he “who sells by the original or unbroken package or barrel only.” All others are retail dealers. To vary the license under this Act 83, one would have to quit dealing in “original or unbroken packages only,” and go into dealing only at retail, or vice versa; in other words, change business entirely. It would not do to tack the one business onto the other, for if that is done, both licenses are due. City v. Koen & Co., 38 La. Ann. 328.
This Act 83 is purely a revenue measure. The title of the act so expressly declares— “An act to increase the revenue of the state of Louisiana by levying a license on the sale *227 of pistols and pistol cartridges.” The license in question stands, therefore, on precisely the same footing as the licenses in the general license revenue law (Act 171 of 1898); and it follows that if, in the case of this particular license, the constitutional requirement of graduation is satisfied by prescribing a different license for wholesale and retail dealers, so this requirement would be satisfied by a general license law which in all cases made no attempt at graduation, but merely prescribed different licenses for wholesale and retail.
Under the regimes of the Constitutions of 1845 and 1868, when license taxation, like all other taxation, was subject to the rule of equality and uniformity, the practice was to impose a different license.upon wholesale and retail dealers; and no one thought of questioning the constitutionality of so doing, although every and the least attempt of the Legislature at deviation from the rule of absolute equality and uniformity seems to have been invariably challenged by some licensee and condemned by this court. Parish of Orleans v. Cochran, 20 La. Ann. 373; City of New Orleans v. Home Mut. Ins. Co., 23 La. Ann. 449; State v. Endom, 23 La. Ann. 063; Honold v. City of New Orleans, 23 La. Ann. 726; Cullinan v. City of New Orleans, 28 La. Ann. 102; City of New Orleans v. Rhenish Westphalian Lloyds et al., 31 La. Ann. 784, 830. On the other hand, just as soon as the Constitution of 1879 had changed the rule of equality and uniformity to the contrary rule of- graduation, the Legislature proceeded to graduate separately the licenses of wholesale and retail dealers. This shows what has been the view of the matter taken by the Legislature and by business men, and we might add by the profession and the courts, during this long period and under these several' Constitutions.
Against this consensus of opinion, and, in a sense, of adjudication by this court, the Browne Case stands alone, for, when we come to examine closely the cases upon which it is founded, we find that the license in question in each of them was admitted to be graduated, and its legality was contested solely on the ground of the sufficiency or justice and fairness of the graduation.
In State v. Traders’ Bank, 41 La. Ann. 329, 6 South. 582, the license in question was graduated, and the sole question was as to whether the graduation was just and equitable.
Again, in State v. London, Liverpool & Globe, 40 La. Ann. 463, 4 South. 504, the license in question was graduated, and the sole question was as to whether the graduation should not have been in exact proportion to the business done.
State v. Chapman, 35 La. Ann. 75, involved a license upon traveling agents, graduated according to the number of houses they traveled for, and the sole question was as to the legality of that basis of graduation.
State v. O’Hara, 36 La. Ann. 93, involved .a license upon concert halls, etc., graduated upon the population of the city in which such concert hall, etc., was operated. The court held that the basis of the graduation was left by the Constitution to the legislative discretion, and that that mode of graduation was a sufficient compliance with the constitutional requirement.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this suit be dismissed.
NICHOLLS, C. J., takes no part, having-been absent on account of sickness when the case was argued.
See dissenting-opinion of BREAUX, J., 36 South. 331.