(84 South. 481)

No. 22588.

**STATE ex rel. PAYNE, Tax Collector, v. EXCHANGE BANK OF NATCHITOCHES.**

(April 5, 1920. Rehearing Denied May 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Banks and banking** ☞12—**Bank's capital and "surplus," made basis of annual license tax, does not include "undivided profits"; "declared or nominal capital and surplus."**

In view of Civ. Code, arts. 15 and 17, and Act No. 170 of 1898, § 27, and Acts (Ex. Sess.) No. 14 of 1917, a bank's "declared or nominal capital and surplus" made the basis of annual license tax under Act No. 171 of 1898, § 3, par. 2, does not include undivided profits; since the terms "surplus" and "undivided profits" have different meanings in banking circles, the term "surplus" having reference to the fund which had been permanently set apart as such, having been paid in originally by the stock-

holders for that purpose, or transferred from the undivided profits account.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Surplus; Second Series, Undivided Profits.]

2. **Statutes** ☞219—**Construction by officials charged with enforcement not controlling, but entitled to weight.**

Though an interpretation of a law by other departments of the government does not control the judicial department, especially where the correctness of such interpretation is the subject of investigation, nevertheless when officers specially charged with the observance and enforcement of a particular law have for a long time determined its meaning and acted accordingly, their interpretation is entitled to great weight.

Monroe, C. J., dissenting.

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; W. T. Cunningham, Judge.

Suit by the State, on the relation of J. W. Payne, Tax Collector, against the Exchange Bank of Natchitoches. Judgment for plaintiff, and defendant appeals. Judgment annulled, and suit dismissed.

Scarborough & Carver, of Natchitoches, for appellant.

M. L. Dismukes, of Natchitoches, for appellee.

O'NIELL, J. The defendant bank appeals from a judgment ordering the payment of an annual license tax of $150.

The question presented is whether the tax should be $150 or only $75. And that depends upon the question whether the expression, "the declared or nominal capital and surplus," in paragraph 2 of section 3 of Act 171 of 1898 (page 389), which determines the sum that shall form the basis of the annual license tax imposed upon every banking business, includes undivided profits.

The sum of the capital and surplus of the defendant bank is more than $50,000 and less than $100,000. Therefore, if the undivided

profits are not to be regarded as forming part of the surplus, the business of the bank falls in the "Thirteenth Class," for which the annual license tax is $75. If the undivided profits are to be included as a part of the bank's surplus, the sum of the capital and surplus is more than $100,000 and less than $200,000, and the business therefore falls, where the district court has placed it, in the "Twelfth Class," for which the annual license tax is $150.

Acting upon instructions from the supervisor of public accounts, and upon his opinion that undivided profits were not to be regarded as a part of a bank's surplus, within the meaning of paragraph 2 of section 3 of the Act 171 of 1898, the tax collector demanded and collected from the bank a license tax of $75. Thereafter the supervisor of public accounts asked the Attorney General for an expression of opinion or interpretation of the statute; and the latter advised that the term "surplus," as used in paragraph 2 of section 3 of the statute did include undivided profits.

Thereupon the supervisor of public accounts instructed the tax collector to collect a license tax of $150; and, on the bank's refusal to pay the balance of $75, this suit was brought.

[1] This is the first occasion the court has had for interpreting the statute with regard to the question raised. The basis or theory of the Attorney General's opinion, adopted by the district judge, is that the Legislature used the term "surplus" in its broad sense, as embracing all earnings of a bank not yet paid out as a dividend to stockholders. If the Legislature used the term "surplus" in that sense, of course it included undivided profits. But the record discloses—and it is a matter of general knowledge—that each of the terms, "surplus" and "undivided profits," has its technical, well-defined meaning in the business or profession of banking. When employed technically, in the nomenclature of banks and bankers, the term "surplus" means the fund which has been permanently set apart as such, having been either paid in originally by the stockholders for that purpose or transferred from the undivided profits account; and it is not understood in the banking profession as including undivided profits.

Article 15 of the Civil Code, under the heading, Of the Application and Construction of Laws, furnishes a strict rule for interpretation of laws pertaining to a particular trade or profession, viz.:

" * * * Technical terms and phrases are to be interpreted according to their received meaning and acceptation with the learned in the * * * trade or profession to which they refer."

Article 17, under the same heading, furnishes another rule, viz. that laws upon the same subject-matter must be construed with reference to each other, and what is clear in one statute may aid in explaining what would otherwise be doubtful in another. Applying that rule, we observe that Act 170 of 1898, levying an annual ad valorem tax upon all taxable property in the state, and Act 171 of the same year, levying an annual license tax upon every trade, business, calling, or profession, were prepared by one and the same committee, having the same member of the General Assembly as its chairman. In section 27 of Act 170 of 1898, the committee adopted as the basis of assessment of the ad valorem tax upon shares of bank stock, "their actual value as shown by the books of the bank," which, of course, includes the undivided profits of the bank. On the other hand, in paragraph 2 of section 3 of the Act 171 of 1898, the same committee adopted, as a basis for the license tax to be paid by every bank, "the declared or nominal capital and surplus," which term, as understood by persons learned in the banking profession, does not include undivided profits.

We observe, too, that when, by Act 14 of the Extra Session of 1917, the General Assembly revised the method of assessment of the ad valorem tax upon shares of bank stock to conform with the new order of assessments brought about by the creation of the board of state affairs, all doubt was eliminated as to the clear distinction and technical meaning of the terms, "capital" and "surplus" and "undivided profits," as used in the law. Where the previous law had, in order to reach the assets of national banks, declared that no assessment should be made in the name of any bank or banking company against its capital stock, but that the shares should be assessed in the name of the shareholders, "at their actual value as shown by the books of the bank," the new law declares "that no assessment shall hereafter be made against the capital stock, surplus, or undivided profits, of any bank," etc. We have no reason to doubt that the General Assembly employed and understood those terms as bankers employ and understand them.

The record discloses—and perhaps the disclosure explains why the court has not heretofore had occasion to pass upon the question now presented—that the auditing department and the bank examining department of the state government have heretofore consistently interpreted the expression in paragraph 2 of section 3 of Act 171 of 1898, "the declared or nominal capital and surplus," as not including undivided profits. If that interpretation had not been in accord with the intent and meaning of the legislators who framed and enacted the law, the phrase would have been changed, so as to include undivided profits, at one of the many sessions of the Legislature held during the past 32 years.

[2] Although an interpretation put upon a law by other departments of the government does not control the judicial department, especially in a case where the correctness of such interpretation is the subject of investigation, nevertheless when the officers who are specially charged with the observance and enforcement of a particular law have for a long time determined its meaning and acted accordingly, their interpretation is entitled to great weight with the courts. That is because of a presumption that the public officers' method of applying the law would not be tolerated until it had grown into a regular practice, if it were unauthorized.

It may be, as the Attorney General suggests, that, under the interpretation which has heretofore been put upon this statute, the banks can evade the payment of license taxes by deferring indefinitely the transfer of undivided profits to their surplus account. But that is a matter to be considered by the Legislature; and we have no reason to doubt that it was duly considered when the statute was prepared.

The judgment appealed from is annulled, and the state's demand is rejected, and the suit dismissed.

MONROE, C. J., dissents.