REDMANN, Judge.
Two owners of horse-drawn sightseeing vehicles authorized to operate in New Orleans sought mandamus against the appropriate city officials to cancel six certificates of public necessity and convenience (CPNCs) issued to intervenor for similar vehicles. Petitioners’ ground was that in-tervenor did not own any horses and carriages when his CPNCs were applied for and obtained.
From a judgment granting mandamus, intervenor appeals. We reverse.
Petitioners’ theory, adopted by the trial judge, interprets the Code of the City of New Orleans, § 12-96, to prevent the issuance of a CPNC to one who does not already have his vehicle. Plaintiffs rely on the provision that “After the application for a permit to operate a * * * for hire vehicle as owner shall be approved, and before the permit is issued” (emphasis added) the vehicle must be identified and inspected and a CPNC “tag” obtained. This theory construes “permit to operate”, or “permit”, as meaning CPNC.
In the first place, if petitioners’ construction of § 12-96 be adopted, intervenor would be entitled to have the judgment modified so as to cancel his CPNCs only as permits to operate, leaving them in force as “grants” of CPNCs under § 12-92 (b) (there being no showing the officials erred in determining under that section that the CPNCs “shall be granted to applicant”), or as “approvals” of applications for permits to operate under § 12-96 (the section petitioners rely on) which “shall be approved” prior to identification and inspection of vehicles. Since petitioners have shown no ground for revoking the grant of the CPNCs, or the approval of the application for permit to operate (assuming that permit is, as petitioners argue, the CPNC), inter-venor’s right to ultimate issuance of the final permit to operate (upon meeting other requirements such as inspection) cannot be abrogated by these proceedings.
In the second place, especially since petitioners’ argument is of semantics rather than substance, the doctrine of contemporaneous construction (of an uncertain statute by administrative officials charged with its execution) requires that a court allow great weight to administrative officials’ interpretation of a doubtful statute in exercising their function, as long as that construction is reasonable and does not clearly conflict with the statute’s provisions. A court may not supplant a reasonable administrative interpretation merely because some other construction is deemed somewhat more reasonable; the administrative construction is not to be overturned unless clearly wrong, or unless a different construction is clearly required. This doctrine is firmly established in Louisiana. State ex rel. Guillot v. Central Bank & Tr. Co., 143 La. 1053, 79 So. 857 (1918); St. Bernard Syndicate v. Grace, 169 La. 666, 125 So. 848 (1929); State v. Standard Oil Co. of La., 190 La. 338, 182 So. 531 (1938); Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (1945). See also State v. Comptoir National D’Escompte de Paris, 51 La.Ann. 1272, 26 So. 91 (1899); State v. Ex *638 change Bank, 147 La. 25, 84 So. 481 (1920); State v. Grace, ex rel. Payne, 187 La. 1028, 175 So. 656 (1937); Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223 (1949) ; Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958).
§ 12-96’s requirement of inspection “before the permit is issued” is of doubtful meaning for two reasons.
First, § 12-51 declares
“The term ‘permit’ is construed to mean a certificate of public necessity and convenience (CPNC), a driver’s permit to operate any vehicle for which a certificate of public necessity and convenience has been issued, a starter’s permit, a permit to act as a sightseeing agent, guide or lecturer, and a certificate of public necessity and convenience tag.”
In the “Driver’s Permit” Division (3) of Article V of Chapter 12 of the Code (§§ 12-66 through 12-99) that permit is described as “permit to operate taxicabs or for hire vehicles”, § 12-66; as “permit to own or operate a taxicab or other for hire vehicle”, § 12-73; as “permit to operate a taxicab solely as a driver”, § 12-77; as “permit to operate a taxicab or for hire vehicle as a driver”, § 12-79.
Then, in Division 4 of the Article, relative to CPNCs, after § 12-90 states the requirements of having a CPNC, § 12-91 provides “Each application for a permit to operate a taxicab or other for hire vehicle as owner shall, in addition to the requirements of Division 3 of this article [i. e., the Driver’s Permit division], contain” four items (including insurance information, trade name and vehicle color design). (Emphasis and bracketed words added.)
The provision of § 12-96 (on which petitioners rely) is that “After the application for a permit to operate a taxicab or other for hire vehicle as owner shall be approved, and before the permit is issued” the vehicle must be submitted for inspection (emphasis added).
The CPNC requirement of § 12-90 (a) is that “No person shall own and operate or permit any other person to operate * * * without first having applied for and received a certificate of public necessity and convenience”. “Requirements for issuance” is the heading of § 12-92, which in subd. (b) provides “in determining whether a certificate of public necessity and convenience shall be granted to an applicant” (emphasis added), the director of utilities shall consider six items, all of which relate to the public’s need and convenience (except possibly the discretionary grant to the director to require other relevant facts). None of these six items is a repetition of any of the four items required by § 12-91 to be stated in an application for a “permit to operate * * * as owner” (in addition to non-owner driver’s permit to operate requirements such as police record check, etc.).
Thus it is far from clear that § 12-96’s reference to “permit to operate * * * as owner” means CPNC.
Arguably the “permit to operate * * * as owner” may be the owner’s analogue to the driver’s “permit to operate * * * as a driver” (since under § 12-91 the requirements are largely identical) ; or it may be the CPNC tag affixed to the windshield of the vehicle (§§ 12-90(b) and 12-96(d)); or it may be the preliminary administrative document called a CPNC which inter-venor holds.
(It may even be said that the real CPNC is the “CPNC tag” which is ultimately affixed to the windshield; § 12-90(b) prohibits for hire use of a vehicle “which does not have affixed to the windshield thereof a valid certificate of public necessity and convenience”; it does not refer to the windshield document as a CPNC tag. Only § 12-96 does. If petitioners’ argument were that CPNC tags, evidencing inspection, safety, payment of fees etc., could not be issued without inspection, neither city officials nor intervenor would disagree.)
*639 Because § 12-96’s provision is, at best, doubtful in meaning, we need only consider whether the administrative interpretation is a reasonable one. We conclude it is.
The “granting” of a CPNC to one who has no vehicle is fairly authorized by § 12-92(b). The city officials evidence the granting by issuing a document they call a CPNC (although perhaps, as noted, the real CPNC is the windshield tag). § 12-90 (b) prohibits operation without a “CPNC” affixed to the windshield, and under § 12-96 the CPNC “tag” can only be obtained after inspection certifying freedom of the vehicle from mechanical defects. No one may operate a for hire vehicle without a special driver’s permit, § 12-66, and “All applicants for a permit to operate”, § 12-67, i. e., presumably whether as owner or as driver, must meet the requirements as to citizenship, residence, clear police record, etc., in addition to which the applicant for permit to operate as owner must provide insurance and other information, § 12-91, and after approval but before issuance of permit to operate as owner, must deposit bond or insurance, supply vehicle information, pay fee, submit vehicle for inspection and obtain CPNC tag.
It appears from the director of utilities’ testimony that the administrative officials consider the owner’s “permit to operate * * * as owner” is the CPNC tag which is affixed to the windshield. As a matter of grammatical nicety, the obtaining of this tag is a prerequisite (among others) to issuance of a permit to operate as owner; but as a matter of administrative procedure the CPNC tag is not issued until security is deposited, fees paid and (as the ordinance expressly requires) satisfactory inspection had. Thus, administratively, the issuance of CPNC tag and its affixing to the windshield is the final step in obtaining, and itself constitutes, the permit to operate as owner (although §§ 12-66 and following would additionally require a permit to operate as driver-owner or a permit for a third person to operate solely as driver).
It may also be noted that § 12-99 requires that a CPNC (not “grant” of CPNC or “approval” of application to operate as owner) “shall be withdrawn from the holder” when the “holder thereof * * * fails to place vehicle in public use within thirty days after a granting of a” CPNC. The wording of this section indicates that the “granting” (authorized in that word by § 12-92 (b) independent of vehicle ownership) results in the grantee becoming the “holder” of a CPNC. (Petitioners’ interpretation of § 12-96’s permit as the CPNC is to this extent not consistent with § 12-99.)
We might conclude that the administrative interpretation is a more reasonable construction of the ordinance than that urged by petitioners. But we need, and do, conclude only that the administrative construction is a reasonable one and does not clearly conflict with any provision of the ordinance, which does not plainly require a different interpretation. The administrative construction ought therefore not be overturned. State v. Standard Oil Co. of La. and other authorities cited above.
Petitioners expressed some concern that CPNCs issued to “ghost vehicles” would prevent others (including themselves) from obtaining CPNCs to put to real use, and thus defeat rather than serve public need. Under § 12-99’s 30-day limit (except for extenuating circumstances approved by the director) an unused CPNC must be withdrawn. Thus, even if CPNCs were issued to vehicles instead of to “applicants” the CPNCs would, in a reasonable time, expire unless actual vehicles are placed at the public’s service. Here, the director considered as an extenuating circumstance the fact that horsedrawn carriages cannot be bought from a show room, but must be located or manufactured. He had therefore granted extensions of from two or four months be *640 fore this suit was filed.[1] Neither pleadings nor evidence directly question the obvious reasonableness of this action of the director.
The judgment appealed from is reversed and annulled, and petitioners’ suit is dismissed. All costs are to be paid by petitioners.

.Two other CPNCs, which expressly covered existent sightseeing buses since 1968 and 1969, were, according to a witness’s interpretation of the city’s records (not in evidence), converted or authorized to be converted into horse-drawn vehicle CPNCs. But there was neither allegation nor showing that the buses have not been in operation for 30 days, which would require the withdrawal of the CPNCs under § 12-99. The question is not fairly presented by pleadings or adequate evidence, so we express no opinion whether such a conversion of CPNCs was authorized under the ordinance at the time; see § 12-100. A 1970 amendment of § 12-92(b) (la), not applicable to the present case, now places a mathematical limit on horse and carriage CPNCs.