The opinion of the court was delivered by
Breaux, J.
This is an action brought in the name of the State to compel the defendant to pay a “local assessment” on oysters gathered by him within the limits of the Buras Levee District.
The defendant is engaged in the culture of oysters, and in carrying them by water from the Buras Levee District to the City of New Orleans, to be sold. The Levee Board of that district adopted a resolution levying a “local assessment” upon the oysters planted and gathered within the limits of the district. They base their authority so to do upon the laws of this State, and more particularly upon Section 10 of Statute 18, of 1894; Statute 65 of 1894 and Statute 80 of 1898.
The defendant charges that the resolution is illegal, discriminative, unjust, oppressive, and unconstitutional; that the laws in question, under which the Levee Board claim authority, in so far as they relate to “local assessments” on oysters, are unconstitutional, -as they are violative of Article 214 of the Constitution of 1879, and Article 239 of the Constitution of 1898. The “special assessment” imposed a “forced contribution” of twenty-five cents per bale of cotton, ten cents per barrel of sugar, seven and one-half cents per barrel of syrup, five cents per barrel of molasses, two and one-half cents per sack rough rice, one-half cent on each and every bushel of oysters and other esculents, and two and one-half cents- per barrel of oranges, produced in *1294 this district, upon lands subject to taxation under the provisions of the above acts. In 1898, under authority granted by Act 80, of 1898, Section 10, the said Board, by resolution, increased the local assessment on oysters to two and one-half cents per barrel of oysters gathered from the waters of the district.
It appears that some time after the “Buras Levee District” was organized, the taxpayers on the east bank of the Mississippi, in the Parish of Plaquemines, representing the territory on the opposite side of the river to the Buras Levee District, petitioned the Legislature toi organize their section into the Grand Prairie Levee District. Their petition, among other things, sets out that they are in need of levees for the protection of their oyster beds, that being their principal industry and one which was exposed to ruin by the crevasses. The Legislature, thus petitioned, organized the Grand Prairie Levee District, and authorized the levy of similar taxes to those levied by the Buras Levee Board, and the defendant calls attention to the following extract from the law: “Said produce, with the exception of oysters, being produced in said district upon lands subject to taxation under the provisions of this act.” (Italics ours).
The evidence of plaintiff consists of the petition to which we have just referred; of the’ testimony of witnesses, and a printed’ copy of a report on the oyster beds of Louisiana by the United States Fish Commission to which no objection was offered by the defendant. The oyster region is referred to in the Act 110 of 1892 as embracing the heads of the rivers, bayous, lakes, and inlets, bordering on the Gulf of Mexico, within the jurisdiction of the State. They are subject to lease, but not to sale, and a large portion is occupied under lease from the State to the lessees under the authority of the act just cited. The evidence shows that before the Buras Levee District was created there were many crevasses within its limits, and, in consequence, a great deal of loss was incurred, but since the creation of the “Levee Board,” the land owners have not suffered from crevasses and consequent overflows. It is also shown by the record that the assessments collected have been expended for building and repairing the levees. One of the witnesses, who is president of the police jury, said, among other things, and he is not contradicted: “I am sure if we have a crevasse in our district it would destroy the oyster industry in the district.” This *1295 witness also testified that the special assessment on oysters is lower than it is on the other products grown within the limits of the district. The raising of cattle, farming, and the oyster industry are the principal industries.
The judge of the District Court decided that the law authorizing the levy of “special assessment on oysters gathered from the waters of the Buras Levee District is not unconstitutional.”
From this judgment the defendant appeals.
Plaintiff and defendant join in asking that the questions presented, on appeal, be decided on the merits. From the foregoing it appears, as relates to the authority under which the assessment is claimed, that plaintiff’s claim is based on acts of the Legislature and ordinances of the Board of the “Buras Levee District.” At bar, the act of the Legislature was attacked chiefly on the ground that the title was not sufficiently indicative of the purpose of the law. We have not discovered that this attack is well founded. The title is quite lengthy and is comprehensive enough to cover the purpose of the law. The law and the title look to the one purpose, that of maintaining the levees of the district. The defendant also asserts that the lands in the district, upon which the oysters are grown, are not alluvial lands. The “Buras Levee District” is part of the delta of the Mississippi river. It is bounded in front by that stream and the strips of land on either side have but little depth, only about a mile in several places. • As relates to defendant’s denial, that the oyster beds are on alluvial lands, we can only say in answer; that the Mississippi is always given credit for having filled with its alluvion the estuary through which it flows in south Louisiana. Its currents, charged with sand, brought about the elevation of the land near the sea and near its mouth. The western profile of the alluvial region embraces the largest portion of the southern part of the State. The first lines of the alluvial region have been traced at some points as extending as far west as the mounds or remarkable elevations along the Vermillion Bay, viz.: Belle Isle; Cote Blanche; Grand Cote, or Weeks; Marsh, now Avery Island; and Orange, now Jefferson Island, and thereafter extending along the southern lines of the Cote Gelee hills to the Atehafalaya, and from there to the Mississippi river. We will not follow the lines on the opposite side of the Mississippi, although they are equally as well, if *1296 not better, defined on that side. It is true that the alluvial within the indicated limits is not the work of a single period, nor the effect of one cause. The sea may have contributed its share, as made to appear by the accumulation of white sands and shells in certain places. Small streams and dead plants have aided in the formation. The river, however, has always been considered the great and controlling agent before whose force the sea has always been forced to recede, and for that reason' the lands within these limits have always been declared to be alluvial. It follows that the delta proper and the “litoral” on the Gulf of Mexico are the work of the great Father of Waters, to whom the name of the Great Father of Alluvial has also been given. Within the limits of the oyster beds, near its mouth, there may be layers of white sands on the alluvial, brought there by the action of the sea water, but the great body of the land in which it lays is river alluvial and not marine alluvial. It was brought there by the currents of the river, and not by the action of the waves pf the sea.
Defendant’s next contention, in the order in which they are presented, is that if these lands are alluvial, they are not subject to overflow. The distinction which defendant invokes does not impress us as sufficiently marked to sustain his defense. The difference between lands within the alluvial region subject to overflow, and lands always submerged is not taken account of in legislating for the common interest of'both. The interests of their owners are equally subserved by the levees. It happens that the oysters on the submerged lands are as much protected by the levees as are the plants that are cultivated on lands protected from overflow by these levees. The law in this respect is literally complied with, for, without the levees, the oysters would be subject to overflow and destruction from the fresh water of the Mississippi. The lands and reefs, on which are the oyster beds, are subject to overflow, and are, therefore, within .the terms of Article 214 of the Constitution, authorizing a tax on lands within the alluvial portions of the State, subject to overflow. Thd defendant has failed to discover that the oysters are benefitted by the levees, and for that reason contends-that local assessment, which should be imposed only to the extent that the contributor of the tax is benefitted, is not legal. All the evidence shows that the oyster industry is benefitted by the levee system of the district. It is well known that they can not live in fresh water, and much less in water of the river which will mix with *1297 that of the sea in case of a crevasse. The oyster is a neat, clean, marine animal. The muddy residuent of the river water would smother and kill it in a short time. The course of the water, if there were crevasses, would be immediately across the strips of lands to the oyster beds, which it would completely destroy. The mixing of the waters of the. sea and those of the river has the effect of destroying oysters. It is evident from the above, we think, that the protection given to the oyster beds is no less than that given to agriculture and other industries in the district.
Another objection to the assessment is that oysters are not the produce of alluvial lands, and that if they are they are not the produce of lands which are subject to taxation, for the reason that they are cultivated on land belonging to the State. We may, without deep research, find marked analogy between the cultivation of ’the oyster and that of crops. Their beds are on submerged lands, and they require as much, or nearly as much, care and cultivation as crops. It is true that the fisherman need know nothing of the labors of the plow, and the cultivation of the ground, but his work is among the oyster beds laid very near the shore and his oysters, if not produced directly by the land, are very much aided by the favorable "situation in which they are placed, that is, in the territory protected by the levees, as before stated. We agree with counsel that they are not the produce of the land in the sense that plants are by it given life, but we are, as we take it, justified in holding that from the very fact that these lands are owned by the State, and as such, not subject to taxation, gives rise to the right specially to assess them. Being the property of the State, she may well impose the condition that those who occupy them shall pay an assessment tax for public improvement. The defendant is not in the position of a fisherman.who occupies and owns'land. He can not prevent the State from imposing such condition, in so far as he is concerned, and such assessment on her own lands, as may be deemed to the interest of all concerned.
By the way of objection to the demand made by plaintiff something was said about a dual assessment under the law and the ordinance.
Oysters are fished and gathered, at stated seasons, from the reefs on the gulf coast, and transferred by the oystermen to beds or parks upon which they grow to a large size and improve in flavor. The fisherman owes only one assessment, under the ordinance, wherever the oysters *1298 may be gathered or cultivated within the limits of the district. We understand that only one assessment is made, and, unquestionably, only- one assessment can be collected under the laws relating to it.
Defendant complains of the failure to observe the article of the Constitution regarding the limit of taxation. That objection has been passed upon and this court has held, in repeated decisions, that this limit is not to be considered as controlling in matter of special assessment for direct benefit conferred on property under the articles of the Constitution, cited supra.
The intention is to grant a new and additional power which, but for such grant, would have been prohibited by other articles of the Constitution.
The cultivation of the oyster is destined to become one of the most valuable industrial resources of the State, and to that end it must be subject to certain regulations; it must be protected and fostered. This can not be done without financial support. Taxation and special assessment having these ends in view are not to be declared unconstitutional or illegal, unless it is evident that the law-making power has not observed the constitutional 'limits, or that some illegality, or irregularity has arisen in enforcing the law. As we have'found neither to be the case here, it therefore only remains for us to affirm the judgment of the lower court.
For the reasons assigned the judgment of the lower court is affirmed.