(100 South. 244)

No. 26415.

DOMINION LAND CO., Limited, v. STARK, Tax Collector, et al.

(April 28, 1924.)

*(Syllabus by Editorial Staff.)*

Levees and flood control ☞23—Sea marsh held not "land" within statute imposing acreage tax.

Acreage tax, imposed under Act No. 97 of 1890, § 9, on sea marsh, *held* illegal and unauthorized, in view of contemporaneous interpretation adopted by executive and legislative branches of government, and followed for many years; sea marsh not being land within the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Land.]

Appeal from Twentieth Judicial District Court, Parish of Lafourche; H. M. Wallis, Jr., Judge.

Suit by the Dominion Land Company, Limited, against Dr. Thomas Stark, Tax Collector, and others. Judgment for plaintiff, and defendants appeals. Affirmed.

Merrick & Schwarz and Morris B. Redmann, all of New Orleans, and Harris Gagne, of Houma, for appellants.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

By the WHOLE COURT.

LECHE, J. Plaintiff owns a large quantity of land composed of floating prairie and sea marsh subject to tidal overflow, situated along and near the Gulf of Mexico, and within the territorial confines of the Atchafalaya Basin levee district. The board of commissioners of that levee district, acting by virtue of section 9 of Act 97 of 1890, the statute which created the district, ordered in the year 1922, a special assessment or forced contribution of 2½ cents per acre, to be imposed for that year and the three previous years upon plaintiff's said lands, and the present

proceeding was instituted by plaintiff to have the tax declared illegal and to perpetually enjoin the collection thereof.

Plaintiff contends for various reasons that there is no law authorizing the Atchafalaya Basin levee board to impose the special assessment or local contribution presently sought to be collected upon its lands, and the solution of that issue depends in great measure upon the construction which should be given to the section of the statute, upon which the board of commissioners rests its authority for its action.

The Atchafalaya Basin levée district was created by Act 97, page 107, of 1890, and is composed of all that territory in the southern part of Louisiana—

"south of Old River and between the Mississippi river and the [bayou] Lafourche on the east, and a line down to Atchafalaya river to the north boundary of St. Martin [parish]; along this line to the Teche, thence down the Teche, and thence down the Atchafalaya to its mouth, * * *." Section 1.

By section 9 of the act (page 111) the board of commissioners of the district is authorized—

"to levy annually a local assessment or forced contribution of two and a half cents on each and every acre of land within said district, * * * which shall be placed upon the assessment rolls of the respective parishes and parts of parishes of said district, and shall be collected in the same manner and paid into the state treasury as hereinbefore provided for the district levee tax of ten mills; * * * and provided that said assessment or forced contribution shall not be levied on lands not alluvial."

It thus clearly appears that the board is authorized under the language of the statute to impose and cause to be collected a local assessment or forced contribution of 2½ cents per acre on every acre of land within the confines of the district provided that it shall not have authority to impose and cause to be collected such local assessment or forced contribution on lands not alluvial.

But it also appears with equal clearness, that there are no lands within the confines of the district that are not alluvial. Alluvial lands are formed by a deposit of mingled sand and mud resulting from the action of fluviatile currents, and these terms are applied by geologists to sedimentary deposits such as occur in the valleys of large rivers. Indeed it is not questioned that all the lands situated in the Atchafalaya Basin levee district are alluvial. That fact was incidentally recognized by this court in the case of Board of Commissioners v. Mialegvich, 52 La. Ann. 1295, 27 South. 790. If then all the lands situated within the boundaries of the Atchafalaya Basin levee district are alluvial, what did the Legislature mean by the proviso hereinbefore quoted? There being no lands within the district except such as are alluvial, why should the lawmaker have provided that the board of commissioners should not have the authority to levy a forced contribution in the way of an acreage tax, upon lands not alluvial? The jurisdiction of the board did not extend over any territory wherein the lands are not alluvial and therefore to construe the proviso according to its literal terms would be to hold that the lawmakers inserted a clause in the statute, which is meaningless and nonsensical. It would be against comity even if not contrary to ordinary rules of statutory construction for a court of justice to ascribe any such laxity to a coordinate department of the government acting within the scope of its constitutional authority. The Legislature undoubtedly had a purpose in inserting the proviso under discussion.

Almost identically the same language is used in section 9, p. 14, of the Act No. 13 of 1892, creating the Lafourche Basin levee district. The latter district is also formed exclusively of alluvial lands and also contains a large area of sea marsh. When the latter board was organized, possibly two years lat-

er than the Atchafalaya Basin levee board, it was soon recognized as a question of great importance to both of these boards to ascertain whether sea marsh and floating prairies were subject to the imposition of acreage taxes. The two districts contained a vast extent of territory composed of that kind of land, long lines of levees had to be raised or constructed along the banks of the rivers surrounding the districts, and the boards found it necessary to avail themselves of every source of revenue authorized by the Legislature, in order to meet the tremendous cost of raising and constructing these levees for protection against overflow. There was a grave doubt as to the authority of the two boards to impose acreage taxes on sea marsh. Whether that doubt arose from the ambiguity of the quoted proviso contained in the sections 9 of each of the acts creating the two boards, or whether it arose from other causes or considerations, it is unnecessary here to decide. In order to obtain an interpretation of the law on the subject, the late Edward N. Pugh, Esq., an attorney of recognized ability as a jurist, and legal adviser of the Lafourche Basin board, accordingly wrote to the auditor of public accounts, the chief revenue officer of the state. The auditor in turn wrote to the Attorney General of the state, and, though the answer of the Attorney General could not be found in the archives of that office, his opinion sufficiently appears by the answer of the auditor to Mr. Pugh, which is couched in the following language:

"Baton Rouge, La., June 3, 1893.

"Mr. Edward N. Pugh, Atty., Donaldsonville, Louisiana—Dear Sir: I referred your letter of the 22d ulte., to the Attorney General for his opinion, and I am today in receipt of his answer, as follows:

"I am fully satisfied that sea marsh and floating prairie are not liable for acreage tax. This acreage tax is a special contribution imposed upon the land benefited. Sea marsh is not only outside the protection of the levees, but it is not land within the meaning of the levee laws; it is property liable to regular taxation, according to its present value, but is not alluvial land liable to the special acreage tax. It may be regular land some day but is not now. * * * "

In deference to this opinion no acreage tax was thereafter assessed upon sea marsh, except perhaps in some isolated instances, which the levee boards uniformly ordered to be canceled for having been erroneously listed on the part of the local parish assessors. It appears that in 1898 another such assessment was imposed by the parish assessor of the parish of Lafourche upon sea marsh belonging to Wm. H. Aymar, situated within the Atchafalaya Levee District. Aymar brought suit in the district court for the parish of Lafourche and enjoined the collection of the acreage tax, and on February 28, 1900, a judgment was rendered by the court, holding that character of land not subject to the acreage tax. This litigation was brought to the attention of the Atchafalaya Basin levee board through its reguar consulting attorney, Hon. O. O. Provosty, who afterwards became Chief Justice of this court. No appeal was taken from the judgment of the District Court of the parish of Lafourche. On the contrary, Judge Provosty, in a letter dated December 15, 1899, wrote Mr. A. D. Barrow, secretary of the Atchafalaya Basin levee board, in regard to the question involved in the suit of Aymar, and, among other things, said:

"My idea is that such suits, I mean suits involving the validity of our 2½ cents acreage tax had better be contested only when unavoidably necessary. Our policy ought to be to let out all lands which can fairly claim not to be within the contemplation of the law.

"Doubtless the present plaintiff is partly right in his contention, the cost of the inclosed copy properly falls upon the Board and I will ask you to send Mr. Badeaux," local attorney for the board, "a check for it."

It was in the year 1900, that the sea marsh now owned by plaintiff in this case was severed from the public domain, and it is admit-

ted that it was never assessed for acreage tax until the year 1917, when that part of it situated in the parish of Terrebonne was placed upon the rolls of that parish by the local assessor. The matter was called to the attention of the Atchafalaya Basin levee board, and at its meeting held on March 6, 1918, that board adopted a resolution wherein it is stated that sea marsh lands are not lands in the strict sense of the word, and further reciting that—

"Whereas lands of this character have not heretofore been assessed in this district, and this board sees no reason why this acreage tax should not be canceled and not collected against such lands, provided it is shown that they are in fact marsh; now therefore be it resolved by this board of commissioners of the Atchafalaya Basin levee district, that the board does now declare that if the Wisner Estates, Inc., and other property owners show to the satisfaction of the assessor of the parish of Terrebonne and the auditor of public accounts of the state of Louisiana, and the sheriff of Terrebonne parish, that said lands are in fact marsh lands in their present state, and not in fact susceptible of cultivation and not subject to said tax, that this board has no objection to the proper officers of the state of Louisiana ordering said acreage taxes thus assessed against said lands canceled, and the sheriff ordered not to collect the same."

It thus appears that, from the time the law was enacted in 1890, the special assessment or local contribution of 2½ cents per acre was never imposed upon sea marsh and floating prairie until the year 1922, when for the first time it was ordered imposed and collected by the Atchafalaya Basin levee board. It further appears according to the opinion of the Attorney General that sea marsh is not land within the meaning of the levee laws as they existed in 1893; that section 9 of Act 97 of 1890, creating the Atchafalaya Basin levee district, was thus contemporaneously construed by the Attorney General as not authorizing the imposition upon sea marsh, of an acreage tax for levee purposes; that this construction of the stat-

156 La.—5

ute was concurred in by the Atchafalaya Basin levee board and the law was for about 30 years thereafter only enforced by that Board, as thus construed; that although there have been many sessions of the Legislature since that law was adopted and thus construed, now over 30 years ago, no change therein or amendment thereto has ever been made; and finally that a construction of that law similar to that given by the Attorney General of the state in 1893 was reached and announced by the district court for the parish of Lafourche in 1900 and assented to at that time by the legal adviser of the Atchafalaya Basin levee board. It then may be fairly and truly concluded that such construction was contemporaneous, that it has been concurred in by the executive and legislative departments of the state, and that it has been universally adopted and followed for such a length of time as to preclude another inquiry as to its correctness by the judicial department of the state.

There is little if any question as to the weight to be given to the interpretation of a law, adopted by the executive and legislative branches of the government, especially when such interpretation is contemporaneous and has been followed for many years.

In the case of State ex rel. Payne, Tax Collector v. Exchange Bank of Natchitoches, 147 La. 26, 84 South. 481, where the decision was written by our present Chief Justice, C. A. O'Niell, the following appears in the syllabus:

"Though an interpretation of a law by other departments of the government does not control the judicial department, especially where the correctness of such interpretation is the subject of investigation, nevertheless when officers specially charged with the observance and enforcement of a particular law have for a long time determined its meaning and acted accordingly, their interpretation is entitled to great weight."

In State ex rel. Guillot v. Central Bank & Trust Co. (In re Central Bank & Trust Co.),

143 La. 1053, 79 South. 857, we said, quoting from Sutherland on Statutory Construction, par. 309:

"The practical construction given to a doubtful statute by the public officers of the state, and acted upon by the people thereof, is to be considered; it is perhaps decisive in case of doubt. This is similar in effect to a course of judicial decisions. The Legislature is presumed to be cognizant of such construction, and after long continuance, without any legislation evincing its dissent, courts will consider themselves warranted in adopting that construction."

See, also, State v. Comptoir National D'Escompte de Paris, 51 La. Ann. 1281, 26 South. 91.

It must be observed that the statute involved in this case, is one which provides a revenue for the benefit of the state. There is no law which demands more attention for its enforcement from public officers or in which the individual citizen is more concerned and interested than one which fixes the amount of contribution by the citizen and regulates the collection of that contribution for the support of our government. When once such a law has received an official interpretation, which has been accepted and acted upon for a number of years both by the citizen and the official, such interpretation should not be changed except for clear and cogent reasons. The cases herein cited also involved the construction of revenue laws and the principles therein established are eminently applicable to this case and should be adhered to. It is to the interest of the state and of the citizen that an interpretation of the law affecting the public fisc, once adopted and acted upon for a long time, should not be changed.

The district court was of the opinion that the acreage tax imposed upon plaintiff's sea marsh was illegal and unauthorized, and perpetuated the injunction preliminarily granted to plaintiff. The finding of that court and its judgment are correct. They should be affirmed; and

It is so ordered.