O’NIELL, Chief Justice
 

 (dissenting).
 

 My opinion is that this case comes within the doctrine that, when a statute — particularly a tax statute — has been given a definite and reasonable construction, by the. Executive Department, and has been administered accordingly for several years, by the ad
 
 *1039
 
 ministrative officers, with the full knowledge and tacit approval of the Legislature, the courts should not then give a different meaning, to the law, in its effect upon past transactions. That is what is called the doctrine of contemporaneous construction. In this case the taxpayer is being penalizéd severely for failing to pay an amount of taxes which was not demanded- by the tax collecting authorities, and was not believed to be due, during the whole period of 8 years. The matter of distributing and apportioning the burden of taxes amqng the taxpayers is, primarily, an administrative function, not a judicial function. The judgment rendered in this case, giving to the severance-tax law a construction different from that which it has had ever since the State has had a severance-tax law, will put upon the oil and gasoline consumers, of this day and age, a burden which, if it is warranted by the statute, should have been apportioned among the consumers during the period of 8 years past. I say, advisedly, that this burden will fall upon the present and future consumers of mineral oil and its products, because. I assume that the producers will not be prepared to take on this unexpected and extraordinary burden, without passing it on to the consumers. The back taxes which this defendant alone is cohdemned to pay amount to $72,591.51, and the penalties which are added amount to $70,323.51, making the total unexpected demand $142,915.-02. In fact, if I understand it right, all of the $96,106.35 of taxes and penalties which the defendant is condemned to pay on the oil that was bought during the past 8 years will be, in effect, a penalty to be paid by the purchaser for failing to deduct jhis- amount from the price paid for the oil, and to pay it to the tax collector, if in fact the purchaser did fail to deduct this amount of the tax from the price paid for the oil. Whatever the penalty is, it is the consequence merely of the defendant’s failure to pay to the tax collectors, during a period of 8 years, an amount of taxes which was never demanded by any of the tax collectors, or deemed to be demandable. If there had been any fraud, or misrepresentation, or concealment, on the part of the taxpayers, in this case, or misunderstanding on the part of the tax collecting authorities, the doctrine of contemporaneous construction would not be applicable. But the failure of the tax collectors to collect the tax which is now demanded was not caused by fraud, or misrepresentation, concealment, or misunderstanding; it was according to the deliberate understanding and construction of the severance-tax law, on the part of the executive and administrative officers, with the tacit approval of the Legislature, ever since the first severance-tax law was enacted, 25 years ago. The act levying the severance tax was amended and re-enacted many times, between 1912 and 1928, without any change as to the deductions which the taxpayer was allowed, in calculating the number of barrels of oil, of 42 gallons, in a given quantity to be measured. The first statute levying a severance tax on the producing of oil or gas was Act No. 196 of 1910, but the tax was declared unconstitutional, in the case of Etchison Drilling Co. v. Flournoy, Tax Collector, 131 La. 442, 59 So. 867, because, according to article 229
 
 *1041
 
 of the Constitution of 1898, the Legislature was forbidden to levy a license tax upon
 
 mining pursuits.
 
 This exemption from taxation was removed by an amendment of article 229 of the Constitution of 1898, pursuant to Act No. 154 of 1910. The first valid severance tax on the producing of oil and gas, therefore, was levied by Act No. 209 of 1912, by which the tax was graded according to the value of the oil or gas. The tax was made payable to the tax collector in each parish in which the oil or gas was produced; and every producer in the State was required by the statute to file with the state auditor, on forms to be prescribed by him, a complete statement of the gross amount of oil or gas produced, and the value thereof, and give such other information pertaining thereto as the auditor might require. By Act No. 41 of 1914 the supervision of collections of the severance taxes was transferred to the Conservation Commission. By Act No. 296 of 1914, the police juries of the parishes were authorized to levy severance taxes, not exceeding the tax levied by the State. The constitutionality of this act'was upheld in Standard Oil Co. v. Police Jury of Red River Parish, 140 La. 42, 72 So. 802. Act No. 41 of 1914 was repealed by Act No. 145 of 1916, which placed the supervision of collections of the severance tax again under the state auditor. Another statute on the subject, Act No. 10 of 1916, was enacted at that session, but it was superseded by Act No. 145 of the same session. By the latter act the severance tax on the producing of oil was graded according to the number of barrels, thus: “Three-fourths , (%) of One (1) cent per barrel for severing oil.” Section 2. Some sections of Act No. 145 of 1916 were amended by Act No. 82 of 1918, which also graded the tax according to the number of barrels of oil. Section 9 of the statute was amended by Act No. 124- of 1918. Act No. 82 of 1918 was superseded by Act No, 20 of the Extra Session of 1918, covering the whole subject of the severance tax. By this act, again, the tax on the business of producing oil was graded according to the number of barrels. Act No. 20 of the Extra Session of 1918 was superseded by Act No. 31 of 1920, covering the whole subject of the severance tax; and the new act provided for grading the tax on the producing of oil according to the value thereof at the time and place of production. By Act No. 140 of 1922, carrying into effect section 21 of article 10 of the Constitution of 1921, the severance tax was levied anew, the tax on the producing of oil being raised from 2 per cent, to 3 per cent, of the value thereof at the time and place of production. By Act No. 5 of 1928 the act of 1922 was amended, and the tax on the producing of oil was graded “per barrel of 42 gallons” and also according to its specific gravity. By the acts of 1912 and 1916 every producer of oil was required to file the quarterly statement, which we have described, with the state auditor; but, by the two acts of 1918 the quarterly statements had to be filed with the Conservation Department, on forms prescribed by the commissioner; and by the act of 1920 and the subsequent acts on the subject the quarterly statements were and are yet required to be made to the supervisor of public accounts, on forms prescribed by that official.
 

 
 *1043
 
 In none of the statutes on the subject of the severance tax was there any mention of any deduction to be made in computing the number of barrels of oil, of 42 gallons, in a given lot of oil to be measured. There was no mention of an allowance for bottom settlings or impurities; no mention of adjustments or corrections for temperature (1 per cent, for every 20 degrees) above or below 60 degrees F.; and no mention of an allowance for loss in handling. These allowances were made by the tax collecting authorities because of the universal custom of the trade, which has prevailed here ever since oil was discovered in Louisiana, nearly 40 years ago. The tax collecting authorities adopted, as the true meaning of a “barrel of 42 gallons” of oil, the universal meaning in the oil business, that is, the net result after deducting from the 42 gallons the allowance for bottom settlings, and after making the adjustment for temperature above or below 60 degrees F., and after deducting the allowance for loss in handling, which is unavoidable. The taxing authorities, therefore, adopted the rule of interpretation of statutes, mentioned in article 15 of the Civil Code, that the terms or phrases having reference to a particular trade or business must be interpreted according to their meaning and acceptation in the trade or business. It is not disputed that the custom of the oil business justified the allowance, by the taxing authorities, of the deduction for bottom settlings, and justified also the adjustment of 1 per cent, for every 20 degrees of temperature above or below 60 degrees F. Neither of these allowances is mentioned in any of the statutes. By the same token that these allowances are made, in computing the number of barrels of 42 gallons of oil, for the purpose of collecting the severance tax, the allowance for loss in handling was justified. It is not disputed that there is an unavoidable loss in the handling of oil, in transferring it into receptacles, and through pipe lines. The testimony of the witnesses for the defendant shows that the average loss from handling is at least 2 per cent. The expert witnesses for the State say that the loss is less than 2 per cent. The dispute in that respect ought to be considered as being settled by the adoption, by the tax collecting authorities, of the allowance of 2 per cent. That allowance is not any more arbitrary than the allowance for bottom settlings, or the adjustment of 1 per cent, for every 20 degrees of temperature above or below 60 degrees F. And it is conceded that the allowance for bottom settlings and the correction or adjustment for temperature were just and reasonable, though not mentioned in the statute. On that subject, I quote from the written opinion delivered by the district judge his finding of fact, viz.:
 

 “While the testimony of the witnesses differed in some respects, yet all agreed that ‘a barrel of oil’, as known and referred to in the oil industry, meant a barrel of 42 gallons, less the deduction made for basic sediment and water, less the deduction or addition for proper temperature adjustment, and
 
 less an additional dedtiction of two per cent for other losses which were difficult to enumerate and explain.”
 
 (The italicizing is by me).
 

 
 *1045
 
 In order to prove the custom of deducting 2 per cent, for loss in handling, in computing the number of barrels of 42 gallons of oil in a given lot to be measured, the defendant in this case introduced in evidence several division orders signed by executive officers and members of the Legislature having royalty interests in oil leases held by the defendant. Every such division order contains this clause:
 

 “Third. — The Standard Oil Company of Louisiana shall deduct two per cent from all oil received from wells into its custody on account of loss in handling. * * * ”
 

 Some of the leases to which these division orders referred were leases on State lands; and some of the division orders were signed by Governor Parker, who was in office from 1920 to 1924, and some were signed by each of his successors in office. The defendant introduced in evidence division orders, containing the clause referring to the 2 per cent, allowance for loss in handling, signed by nine members of the Legislature, and one signed by the president of the hoard of commissioners of the Caddo levee district, one signed by an Assistant Attorney General, and one signed by the director of minerals in the department of conservation. The defendant introduced and verified a list of more than 2,000 names of persons in Louisiana who had signed such division orders, authorizing the deduction of 2 per cent, for loss in handling, in the defining of a barrel of 42 gallons of oil, according to the universal custom of the trade. I respectfully submit, therefore, that there was no misunderstanding or oversight, on the part of the executive officers of the State, or on the part of the Legislature itself, in the matter of construing the severance tax statutes, in defining the meaning of a barrel of 42 gallons of oil, according to the universal custom of this important business.
 

 I respectfully subrqit that, if a change is to be made now, in the interpretation which has been put upon the severance-tax statutes by the executive department, with the acquiescence of the Legislature itself, the change ought to be made by the Legislature, not the courts, and such a change should not affect past transactions, to the prejudice of those who have dealt with the State in good faith. In that connection, there is in this record evidence showing that, when the United States government, through the Secretary of the Interior, on August 6,' 1932, ordered all future royalties on leases on government lands to be paid on the basis of 100 per cent., the order was made effective as to future payments only, and not as to deductions that had been made in previous payments, similar to the deductions complained of in this case.
 

 I concede that no action or inaction on the part of a tax collecting officer of the State can estop the State from collecting a license tax to which she is entitled. It is so provided in section 1 of Act No. 148 of 1906. But the doctrine of contemporaneous construction is not founded upon a plea of estoppel. An estoppel bars the recovery of something which the party estopped would be entitled to if not es-topped. The doctrine of contempora
 
 *1047
 
 neous construction goes to the very. merits of the case, and means that, when a 'law has been construed by the executive officers of the State, in a way which gives it a certain definite meaning, consistently, for a long time, the presumption is that the Legislature approves that construction of the law, otherwise it would not be allowed to continue. The doctrine is especially applicable to statutes of vast public importance; and it has been applied particularly to tax statutes, by this court and by the Supreme Court of the United States. State ex rel. Da Ponte v. Board of Assessors, 35 La.Ann. 651; State v. Comptoir National D’Escompte de Paris, 51 La.Ann. 1272, 26 So. 91; State v. Young, 137 La. 102, 68 So. 241; State ex rel. Guillot, Tax Collector, v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857, 859; State ex rel. Payne, Tax Collector, v. Exchange Bank, 147 La. 25, 84 So. 481, 483; Dominion Land Co. v. Stark, Tax Collector, 156 La. 124, 100 So. 244, 247; St. Bernard Syndicate v. Grace, Register of State Land Office, 169 La. 666, 125 So. 848, 850; United States v. Moore, 95 U.S. 760, 24 L.Ed. 588; Hahn v. United States, 107 U.S. 402, 2 S.Ct. 494, 27 L.Ed. 527; United States v. Johnston, 124 U.S. 236, 8 S.Ct. 446, 455, 31 L.Ed. 389; United States v. Alabama Great Southern Railroad Co., 142 U.S. 615, 12 S.Ct. 306, 308, 35 L.Ed. 1134; Copper Queen Consolidated Mining Co. v. Arizona, 206 U.S. 474, 27 S.Ct. 695, 51 L.Ed. 1143; United States v. Cerecedo Hermanos y Compania, 209 U.S. 337, 28 S.Ct. 532, 52 L.Ed. 821.
 

 In State ex rel. Guillot, Tax Collector, v. Central Bank & Trust Co., where a. license tax was in contest, the court decided that the bank did not owe the license-tax, on the doctrine of contemporaneous construction, and said:
 

 “This is similar in effect to a course of judicial decisions. The Legislature is. presumed to be cognizant of such construction, and after long continuance, without any legislation evincing its dissent, courts will consider themselves warranted, in adopting that construction.”
 

 In State ex rel. Payne, Tax Collector, v. Exchange Bank, the question was. whether undivided profits should be included in the sum of the “declared or nominal capital and surplus,” in computing the tax; and the court decided that the undivided profits were not included, because the auditing department and the-bank examining department had so construed the statute for a long period of years. Hence it was said :
 

 “If that interpretation had not been in-accord with the intent and meaning of the legislators who framed and enacted the law,, the phrase would have been changed, so as. to include undivided profits, at one of the many sessions of the Legislature held during the past 32 years.”
 

 In the case of Dominion Land Co. v. Stark, Tax Collector, 156 La. 124, 100 So. 244, 247, a tax was adjudged illegal, under the doctrine of contemporaneous construction, thus:
 

 “It must be observed that the statute involved in this case, is one which provides , a
 
 *1049
 
 revenue for the benefit of the state. There is no law which demands more attention for its enforcement from public officers or in which the individual citizen is more concerned and interested than one which fixes the amount of contribution by the citizen and regulates the collection of that contribution for the support of our government. When once such a law has received an official interpretation, which has been accepted and acted upon for a number of years both by the citizen and the official, such interpretation should not be changed except for clear and cogent reasons. The cases herein cited also involved the construction-of revenue laws and the principles therein established are eminently applicable to this case and should be adhered to. It is to the interest of the state and of the citizen that an interpretation of the law affecting the public fisc, once adopted and acted upon for a long time, should not be changed.”
 

 State v. Comptoir National D’Escompte de Paris, 51 La.Ann. 1272, 26 So. 91, was a suit for a license tax, and the question was whether the defendant’s business was, in the terms of the statute, the “business of carrying on a bank.” Act No. 150 of La. of 1890, § 3, par. 2. The court decided in favor of the defendant, on the doctrine of contemporaneous construction, saying:
 

 “The contemporaneous construction of a statute by those charged with its execution should not be disregarded except for cogent reasons, and unless it be clear that such construction was erroneous; and particularly is this true when the changed construction operates retroactively, and imposes upon citizens or corporations charges or exactions for doing business to which they were not subjected under the construction which obtained when such business was entered into and while it was being conducted.”
 

 In the case last quoted' the court cited several decisions by the Supreme Court of the United States, applying the doctrine of contemporaneous construction, among them being United States v. Johnston, 124 U.S. 236, 8 S.Ct. 446, 455, 31 L.Ed. 389, and United States v. Alabama Great Southern Railroad Co., 142 U.S. 615, 12 S.Ct. 306, 308, 35 L.Ed. 1134. In United States v. Johnston, the court applied the doctrine thus:
 

 “In view of the foregoing facts the case comes fairly within the rule, often announced by this court, that the contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled' to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. Edwards v. Darby, 12 Wheat. 206, 210 [6 L.Ed. 603, 604]; U. S. v. Moore, 95 U.S. 760 [24 L.Ed. 588]; Hahn v. U. S., 107 U.S. 402, 2 S.Ct. 494 [27 L.Ed. 527]; U. S. v. Philbrick, 120 U.S. 52, 59, 7 S.Ct. 413 [30 L.Ed. 559, 561].”
 

 In St. Bernard Syndicate v. Grace, referring to the contemporaneous construction of certain tax statutes, providing for the sale of lands adjudicated to the State for delinquent taxes, the court said:
 

 “The courts are reluctant to overrule a long-standing construction placed on a statute by administrative officers charged with
 
 *1051
 
 its execution and enforcement, and will not do so unless such construction is arbitrary and manifestly against the letter and spirit of the statute.”
 

 In United States v. Alabama Great Southern Railroad Co., the court said this — which is very appropriate to the case before us:
 

 “We think the contemporaneous construction thus given by the executive department of the government, and continued for nine years through six different administrations of that
 
 department,
 
 — a
 
 construction which, though inconsistent with the literalism of the act, certainly consorts with the equities of the case,
 
 — should be considered as decisive in this suit. It is a settled doctrine of this court that in case of ambiguity the judicial department will lean in favor of a construction given to a statute by the department charged with'the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change, whereby parties who have contracted with the government upon the faith of such construction may be prejudiced.” (The italics are mine.)
 

 For the reasons which I have stated, I respectfully dissent from the prevailing opinion and decree in this case.