Dear Commissioner Travis:
Reference is made to your recent request for an opinion of this office regarding the Office of Financial Institutions' regulatory responsibilities in connection with the Louisiana Capital Companies Tax Credit Program (the "Program"), LSA-R.S. 51:1921, et seq.
Specifically, you are interested in determining whether, under LSA-R.S. 51:1927, and in particular, Subsection C, Paragraph (4) thereof, tax credits issued under the Program remain protected when a certified capital company ("CAPCO") meets the requirements of the provisions of LSA-R.S. 51:1926(A)(1) and (2), or whether it must meet the requirements of all of the provisions of 51:1926, including those contained within subsections other than Subsection (A) thereof, in order for tax credits to remain protected. Pertinently, with regard to the provisions of LSA-R.S. 51:1927, your letter provides:
 "Our longstanding reading of this section has been that when a CAPCO meets the provisions of 1926(A)(1) and (2), the tax credits associated with the pool have been protected. Following an examination in which we verified that CAPCOS had deployed certified capital into qualified investments according to the 1926(A)(1) and (2) requirements, this office has traditionally provided written notification to the CAPCO indicating the percentage of each pool that has been invested and confirming that the tax credits are no longer subject to recapture, repayment, retaliation, or forfeiture if the 1926(A)(2) provision had been met. However, prior to the issuance of one of these letters recently, we have reviewed and reconsidered the meaning of the provisions of this section. Our review has focused on [the words "all and "including" contained in LSA-R.S. 51:1927(C)(4)]. Since a CAPCO can violate another provision of 1926 other than (A)(1) or (2), we are now unsure if the tax credits are, in fact, protected when a CAPCO meets the requirements of those specific subsections in connection with an investment pool."
LSA-R.S. 51:1927(C) provides, in pertinent part:
 C. At the end of the one-hundred-twenty-day grace period, if the certified Louisiana capital company and any investment pools that have not yet been decertified, as the case may be, are still not in compliance with R.S. 51:1926, the commissioner shall send a notice of involuntary decertification of the certified Louisiana capital company and any affected investment pools, as appropriate, to the company, to the secretary of the Department of Revenue, and the commissioner of the Department of Insurance. Voluntary or involuntary decertification of a certified Louisiana capital company and any affected investment pools may cause the forfeiture of the remaining and unclaimed income tax credits under this Chapter and premium tax credits under R.S. 22:1068(E), which correspond to such certified Louisiana capital company or to such investment pools, respectively, and shall cause to recapture of all credits taken by investors with respect to such certified Louisiana capital company or to such investment pools, respectively, to be due and payable to the Department of Revenue or the Department of Insurance in the year of decertification, notwithstanding the years for which the credits were originally taken may have prescribed, as follows:
 (1) If any investment pools are decertified due to the inability of a certified Louisiana capital company to comply with all requirements for continued certification under the provisions of R.S. 51:1926 within three years of the investment dates of such investment pools, one hundred percent of all credits relating to such investment pools which have been taken by investors shall be due and payable and any remaining and previously unclaimed investor credits relating to such investment pools shall be forfeited.
 (2) When a certified Louisiana capital company meets all requirements for continued certification of any investment pools under R.S. 51:1926, including R.S. 51:1926(A)(1), but excluding R.S. 51:1926(A)(2), those insurance premium tax credits relating to such investment pools which have been or will be taken by investors within three years from the investment dates of such investment pools will not be subject to recapture or repayment.
 (3) When a certified Louisiana capital company meets all requirements of Paragraph (2) of this Subsection and subsequently fails to meet the requirements for continued certification of any investment pools under the provisions of R.S. 51:1926, only those insurance premium tax credits that have been or will be taken by investors after the third anniversary of the investment dates of such investment pools shall be subject to recapture and repayment and any remaining and previously unclaimed insurance premium tax credits shall be forfeited.
 (4) When a certified capital company meets all requirements for continued certification of any investment pools, including 51:1926(A)(1) and (2), no insurance premium tax credits or income tax credits relating to such pools shall be subject to recapture, repayment, retaliation, or forfeiture." (Emphasis supplied).
The undersigned has had the opportunity to discuss this matter with members of your staff, and to review the legal memorandum on this matter which was attached to your request. We are advised that in spite of the recent questions which have arisen within your office regarding the proper interpretation of LSA-R.S. 51:1927(C)(4), the Office of Financial Institutions has consistently construed LSA-R.S. 51:1927(C)(4) as an exception to, or protection against, the ability of the state to require the "recapture, repayment, retaliation, or forfeiture" of tax credits issued under the Program in connection with CAPCOs and investment pools which have complied with the investment requirements of LSA-R.S.51:1926(A)(1) and (2). We are further advised that many, if not all, CAPCOs and CAPCO investors have relied upon this long-standing construction of LSA-R.S. 51:1927(C)(4).
In spite of the ambiguities which have recently been perceived in the use of the words "all" and "including" as contained within LSA-R.S.51:1927(C)(4), we see merit in the Office of Financial Institutions' long-standing interpretation of this statutory provision. Although LSA-R.S. 51:1927(C) clearly provides that the decertification of a CAPCO or an investment pool can result in the forfeiture of tax credits, paragraph (4) thereof appears to have been intended by the legislature to provide the exception to that rule with regard to CAPCOs who have met " all requirements for continued certification ".
We also call your attention to the doctrine of contemporaneous construction. Pursuant to that doctrine, the interpretation an administrative agency or department has, over a long period of time, placed upon a statute or statutes it is charged with executing must be given substantial weight. Ouachita Parish School Board v. OuachitaParish Supervisors Association, 362 So.2d 1138 (La. 1978); Washington v.St. Parish School Board, 288 So.2d 321 (La. 1974); Dominion Land Co. V.Stark, 100 So. 244 (La. 1924).
In accordance with the doctrine of contemporaneous construction, a court of law faced with determining the correct interpretation of LSA-R.S. 51:1927(C) would in all likelihood give great weight to the Office of Financial Institutions' long-standing construction, as we do.
We recognize that final resolution of this issue is important to the Office of Financial Institutions and to the CAPCOs and investors who have relied upon the Office of Financial Institutions' interpretation of LSA-R.S. 51:1927(C)(4). As such, we suggest that the Office of Financial Institutions consider bringing this matter to the attention of the legislature, in order that the language of LSA-R.S. 51:1927(C)(4) can be conformed to clearly reflect legislative intent in this regard.
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY: ________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam